[Cite as *State v.Hoopingarner*, 2018-Ohio-2690.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| RAMON R. HOOPINGARNER | : | Case No. 2017CA00173 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:                    Appeal from the Court of Common
                                            Pleas, Case No. 2017CR0789

JUDGMENT:                                   Affirmed

DATE OF JUDGMENT:                           July 9, 2018

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

JOHN D. FERRERO                             BERNARD L. HUNT
Prosecuting Attorney                        2395 McGinty Road, NW
KATHLEEN O. TATARSKY                        North Canton, OH  44720
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, OH  44702-1413

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Ramon R. Hoopingarner, appeals his August 14, 2017 conviction in the Court of Common Pleas of Stark County, Ohio.  Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On May 26, 2017, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25.  Said charge arose from an incident between appellant and his wife, T.H.

{¶ 3}  A jury trial commenced on August 8, 2017.  The jury found appellant guilty as charged.  By judgment entry filed August 14, 2017, the trial court sentenced appellant to thirty-six months in prison.

{¶ 4}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 5}  "THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, THUS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE OF GUILT."

II

{¶ 6}  "THE APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL WAS DENIED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."

I

{¶ 7}  In his first assignment of error, appellant claims his conviction was against the sufficiency and manifest weight of the evidence.  We disagree.

{¶ 8}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).   "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 9}   On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 10}  Appellant was convicted of committing domestic violence in violation of R.C. 2919.25(A) which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 11} Appellant challenges the credibility of the witnesses.  The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that

does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 12} The jury heard from four prosecution witnesses, Canton Police Officer Vincent Romanin (responding officer), Carl E. Baker, Jr. (victim's ex-husband), Brandon Baker (victim's child), and Carl E. Baker, III (victim's child), and one defense witness, the victim herself, the wife of appellant.

{¶ 13} Officer Romanin testified he was dispatched on a call of domestic violence. T. at 152. When he arrived on the scene, he spoke with the victim. T. at 155. He observed blood "around her, the side of her head." T. at 156. The victim "was very upset, intoxicated, seemed to be distraught." T. at 157. At first she was cooperative, explaining that "she got in an altercation with her husband, that the injury to her ear was because of him." *Id.* However, when she was informed that the police would press charges against appellant on her behalf, she "became very uncooperative." *Id.* Officer Romanin also spoke with the victim's ex-husband, Carl Baker, Jr., and their two children, Carl and Brandon, all who were present during the incident. T. at 156, 160. While Officer Romanin was speaking with everyone, appellant arrived on the scene. T. at 160-161. Appellant stated he left prior to anything getting physical and he did not know how his wife received the injury to her ear, and denied ever putting his hands on her. T. at 161.

{¶ 14} Mr. Baker, Jr. testified he and the victim were married at one time and together they have three children. T. at 180. On the evening of the incident, he received a telephone call around 1:00 a.m., and he was asked to pick up the victim and two others, one of which was their child Brandon, in Ravenna. T. at 182-183. Mr. Baker and their son Carl drove to Ravenna, picked them up, and drove them to the victim's home in

Canton. T. at 183. The victim was intoxicated. T. at 206. As the victim attempted to gain entry into her home, appellant came out onto the porch. T. at 184. The couple started arguing and Mr. Baker called the police. T. at 187, 194. Mr. Baker observed appellant hit the victim, "[s]he had hit the ground, and then as she was on the ground, he had kicked her in the head." T. at 195. Appellant approached Mr. Baker who was inside his vehicle talking to the police, yelled at Mr. Baker, and then left the area. T. at 196-197. Mr. Baker did not observe the victim hit appellant. T. at 197. On cross-examination, Mr. Baker admitted he could not see the entire front porch, but appellant was on the porch at the corner of the house which was visible from his vantage point. T. at 203. On redirect, Mr. Baker testified he had an unobstructed view of what went on between appellant and the victim. T. at 211.

{¶ 15} Brandon Baker, age 14, testified to his evening in Ravenna with his mother who was intoxicated. T. at 180, 214-217. Upon arriving at the home in Canton, Brandon observed appellant push his mother down the stairs and start punching her. T. at 218. Appellant punched her in the face "and then she fell and then he started kicking her" in her stomach. *Id.* Brandon remained in the vehicle with his father. T. at 218-219. He stated he did not talk to the police. T. at 219, 223-224.

{¶ 16} Carl Baker, III, age 16, testified and corroborated his father's and younger brother's testimony. T. at 180, 229-231. Carl was standing in the yard in an attempt to break up the fight, but it was too late. T. at 231. He observed a cut on his mother's ear because appellant "kicked her ear like a football." T. at 232. He never saw his mother attack appellant. *Id.*

{¶ 17} The victim testified in appellant's defense. She explained when she arrived home, "we got in an altercation because of myself." T. at 242. She stated she injured herself by "jumping the dog pen, hit my ear on the dog pen" while she was attempting to enter the home. T. at 243, 253-254. She testified Mr. Baker does not like appellant at all. T. at 244. She explained vehicles are usually parked in front of the house which would have blocked a lot of Mr. Baker's view of the dog pen. T. at 247-248. Once she saw appellant exit the home, she "was being aggressive and starting to put my hands on him." T. at 254. She hit him in the face and was slapping him pretty hard. *Id.* She did not recall telling Officer Romanin that appellant had ripped the earring from her ear. T. at 255.

{¶ 18} The jury had before it pictures of the victim's home and the surrounding area, marked to show where everyone was in relation to their respective vantage point. State's Exhibits 4-6; Defendant's Exhibits A-C.

{¶ 19} Upon review, we find sufficient, credible evidence, if believed by the jury, to support the conviction for domestic violence, and do not find any manifest miscarriage of justice.

{¶ 20} Assignment of Error I is denied

II

{¶ 21} In his second assignment of error, appellant claims he was denied the effective assistance of counsel. We disagree.

{¶ 22} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 23} Specifically, appellant claims his trial counsel was ineffective for not objecting to 1) his conversation with the trial court about his past history with child protective services which he himself initiated; 2) the admission of photographs of the victim's injuries taken by an officer who did not testify; and 3) the placing of handcuffs on him in front of the jury.

CHILD PROTECTIVE SERVICES FILE

{¶ 24} Appellant asked to speak with the trial court about his child protection services file. T. at 9-10. Appellant explained there have been multiple accusations against him of abusing the children, and he wanted the trial court to know that he has "done what I was directed to do to avoid these situations. I've walked away from them." T. at 11. The trial court indicated the information in the file was irrelevant to the case at

hand, and could be harmful to his case. T. at 14-15. The trial court informed appellant it was trying to make sure his case was not prejudiced and he would receive a fair trial. T. at 15. The trial court stated, "I'm afraid if the jury heard some of the comments in this, they could convict you based on these other activities, and I don't think that's fair to you." *Id.* This conversation was had prior to voir dire being conducted. T. at 10-16. There is no evidence that any potential jurors heard this conversation. Appellant has not demonstrated any prejudice regarding this issue.

### PHOTOGRAPHS

{¶ 25} Officer Romanin testified the photographs of the victim's injuries were taken by Sergeant Coates. T. at 157-158; State's Exhibits 1-3. Sergeant Coates did not testify.

{¶ 26} Officer Romanin personally interviewed the victim and observed her injuries. He agreed the photographs were a fair and accurate representation of the injuries he personally observed. T. at 157-159. "The person who took the photograph or video need not testify as long as the witness who does testify verifies that it is a 'fair and accurate depiction.' " *State v. Wilson,* 5th Dist. Stark No. 2016CA00071, 2016-Ohio-5895, ¶ 66, quoting *State v. Freeze,* 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 66. There were no grounds for an objection. Appellant has not demonstrated any prejudice regarding this issue.

### HANDCUFFS

{¶ 27} After the jury was chosen, the trial court gave the jurors a break. T. at 144. After the jurors left the courtroom, the following exchange occurred between defense counsel and the trial court (T. at 116-117):

MS. STOUT: No, Your Honor.  As far as I know, I don't think the jury saw it, but the deputy was in the process of putting him in handcuffs while the jury was in here.

THE COURT: Okay.  I did see the tail end of it.  Let's address the issue.  Just trying to think of the best way to address it.  Do you want me to do it individually, bring them in one at a time?

MS. STOUT: I - - yeah, I don't - - my concern is that it potentially had tainted anything.

THE COURT: Well, it could have.  I mean, there's no question about it.

MS. STOUT: Yeah.

THE COURT: I saw the tail end of it.

MS. STOUT: Yeah.

{¶ 28} The trial court and counsel then discussed the appropriate procedure to follow and question to ask.  T. at 117-123.  Thereafter, the trial court brought each juror up individually and asked each one a variation of: "No, something when the jurors were walking out occurred in the courtroom that may have been a bit unusual, and I wanted to know if you saw anything that you thought was unusual or improper?"  T. at 124-137. Each juror answered in the negative.  *Id.*  Appellant has not demonstrated any prejudice regarding this issue.

{¶ 29} Upon review, we do not find any deficiency by trial counsel rising to the level of prejudice to appellant and therefore, do not find any ineffective assistance of counsel.

{¶ 30} Assignment of Error II is denied.

{¶ 31} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Gwin, J. concur.

EEW/db 619